# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

### CIVIL CASE NO. 3:08cv614

| | |
|---|---|
| RONALD CARTER and REVOLUTIONARY CONCEPTS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) **O R D E R** ) |
| EMMANUEL OZOENEH and JOHN DOES NOS. 1 THROUGH 7, | ) ) ) ) |
| Defendants. | ) ) |

**THIS MATTER** is before the Court on the Plaintiffs' Motion Under Fed. R. Civ. P. 26(d) for Expedited Discovery [Doc. 9], filed May 12, 2009.

## I.  PROCEDURAL HISTORY

On December 30, 2008, the Plaintiffs Ronald Carter ("Carter") and Revolutionary Concepts, Inc. ("RCI") filed this action against the Defendants Emmanuel Ozoeneh ("Ozoeneh") and John Does Nos. 1 through 7 ("John Doe Defendants"), seeking declaratory, compensatory, and injunctive relief with respect to the inventorship and ownership of United States Patent No. 7,193,644 ("the '644 Patent"). [Doc. 1]. Specifically, the Plaintiffs Carter and RCI seek a declaratory judgment to the effect that Carter's former partner,

Ozoeneh, is not an inventor or owner of the technology that is the subject of the '644 Patent. The Plaintiffs also assert a breach of contract claim against Ozoeneh, alleging that Ozoeneh's claims of inventorship and ownership of the said Invention are in violation of the contract of mutual release by which Carter and Ozoeneh dissolved their business partnership. The Plaintiffs further allege that the seven John Doe Defendants, who are identified only as "attorneys who are licensed to practice in the State of North Carolina or to practice before the United States Patent and Trademark Office, and who reside and/or regularly conduct business in Mecklenburg County, North Carolina," intentionally induced Ozoeneh to breach the contract of mutual release. [Doc. 1].

Ozoeneh was served with a Summons and a copy of the Complaint on April 15, 2009. On April 17, 2009, Ozoeneh filed a Motion *pro se*, seeking a ninety (90) day extension of time to file an Answer to the Complaint on the ground that he needed additional time to secure representation. [Doc. 7]. The Court entered an Order granting Ozoeneh's Motion in part on April 20, 2009. [Doc. 8]. While finding that Ozoeneh had stated adequate grounds for an extension, the Court found the length of time requested to be excessive,

and therefore allowed Ozoeneh an extension of only thirty (30) days, making his Answer to the Complaint due on June 4, 2009. [Id.].

The Plaintiffs now seek an Order authorizing them to begin limited discovery in this matter on an expedited basis from Ozoeneh regarding two principal topics: (1) the identities of the John Doe Defendants and the specific acts they undertook to encourage Ozoeneh to make his claims in violation of the contract of mutual release and (2) Ozoeneh's specific contentions with regard to his claim of inventorship of the technology that is the subject of the '644 Patent. The Plaintiffs seek authority to propound up to five (5) interrogatories, five (5) requests for admission, and five (5) requests for the production of documents and things to Ozoeneh on each of the topics above; to issue subpoenas duces tecum to non-parties directed solely to the production of documents and things related to these topics; and to conduct a deposition of Ozoeneh. [Doc. 9].

## II.    FACTUAL ALLEGATIONS

The allegations of the Plaintiffs' Complaint may be summarized as follows. Carter is the inventor of technology that is known as the "EYETALK Communicator" or the "Automated Audio Video Messaging and Answering System," which is the subject of the '644 Patent ("the Invention"). [Doc. 1 at

3

¶9]. Carter formed RCI in order to commercialize the Invention. [Id. at ¶10]. In 2002, Carter formed a partnership with Ozoeneh for the purpose of finding investors to fund the development of a commercial embodiment of the Invention. [Id. at ¶¶11-13]. At the same time, Carter retained a patent law firm, Dougherty, Clements & Hofer ("the Law Firm") to assist him in securing patent rights for the Invention. [Id. at ¶14]. The Law Firm filed a provisional application for the Invention, mistakenly listing both Carter and Ozoeneh as co-inventors. [Id. at ¶¶15-17]. Later, the Law Firm produced an opinion that the subject matter of the provisional application would not be patentable in its current form. [Id. at ¶ 18]. Thereafter, Carter and Ozoeneh dissolved their partnership. [Id. at ¶ 20]. After parting ways with Ozoeneh, Carter continued to develop new features for the Invention. [Id. at ¶21].

In October 2003, the Law Firm filed a non-provisional application, claiming the benefit of the earlier provisional application, but naming only Carter as the sole inventor. The non-provisional application was directed to devices incorporating the new features developed by Carter alone. [Id. at ¶22]. After the non-provisional application was filed, Carter and RCI retained a different law firm, Tillman Wright PLLC ("Tillman Wright"), to take over the patent prosecution. [Id. at ¶23]. Tillman Wright's prosecution efforts were

4

ultimately successful, and the '664 Patent was issued on March 20, 2007. [Id. at ¶24].

Thereafter, Carter and RCI filed suit against the Law Firm, alleging malpractice in destroying Carter's and RCI's foreign patent rights through negligently failing to file timely foreign patent applications. This action is currently pending in the North Carolina Business Court of Mecklenburg County. [Id. at ¶26]. Following contact between counsel for the Law Firm and Ozoeneh in connection with the Business Court litigation, Ozoeneh began making public statements asserting that he is a co-inventor or the sole inventor of the Invention. [Id. at ¶27]. Additionally, Ozoeneh retained counsel, who informed Plaintiffs' counsel "of Ozoeneh's intention to sue Carter and RCI on the basis of Ozoeneh's claim of inventorship, threatening disruption of Carter and RIC's litigation against the Law Firm if a tolling agreement is not signed." [Id. at ¶28].

The Plaintiffs allege that Ozoeneh's threats of litigation have the potential of adversely affecting ongoing negotiations between RCI and two Fortune 500 companies to license the patented technology. [Id. at ¶¶29, 30]. They further allege that these threats are simply "part of a legal strategy by the defendants in the malpractice litigation to inflict collateral damage upon

5

Carter and RCI." [Id. at ¶31]. The Plaintiffs allege that if the Defendants are not enjoined from making claims that call into question Carter's sole inventorship or RCI's ownership of the '644 Patent, the Plaintiffs will be irreparably damaged. [Id. at ¶36].

**III.    ANALYSIS**

Rule 26(d)(1) of the Federal Rules of Civil Procedure provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order."  Fed. R. Civ. P. 26(d)(1).  Generally speaking, the Court may authorize expedited discovery upon a showing of good cause.  See Dimension Data N. Am., Inc. v. NetStar-1, Inc., 226 F.R.D. 528, 531-32 (E.D.N.C. 2005) (denying motion for expedited discovery where plaintiff failed to demonstrate good cause); Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.").

In the present case, the Plaintiffs argue that expedited discovery is necessary in order to ascertain the identities of the individuals who they claim interfered with the contract between Ozoeneh and Carter, and they contend that if the requested expedited discovery is not had, full joinder of the issues

in this case will be unreasonably delayed. [Doc. 9 at 2]. The Court does not agree that any delay incurred in the joinder of issues will be unreasonable. The Court allowed Ozoeneh a brief extension of time of thirty days to answer the Complaint so that he may secure representation in this matter.[1] Once Ozoeneh's Answer is filed, the parties can conduct their Rule 26(f) conference and immediately commence with discovery to ascertain the identities of the John Doe Defendants. Delaying discovery until Ozoeneh has retained counsel and has filed an answer in this case will not result in an unreasonable delay in the joinder of issues in this case.

The Plaintiffs further contend that in the absence of expedited discovery, they "run a serious risk of losing customers and investors" due to the uncertainty created by Ozoeneh's public claims of ownership and inventorship. [Id. at 3]. The Plaintiffs have not made an adequate showing, however, that they will be irreparably harmed absent the requested expedited discovery. Indeed, the Plaintiffs have not even filed a motion seeking preliminary injunctive relief. See Dimension Data, 226 F.R.D. at 531-32 (finding plaintiff's motion for expedited discovery to be premature where

---

[1] Although the Plaintiffs allege that Ozoeneh already has counsel (thus implying that this extension of time is not necessary), there is no evidence before the Court to suggest that this is the case.

7

plaintiff had not yet sought a temporary restraining order or filed a motion for preliminary injunction). Further, the Plaintiffs have not shown that their alleged damages cannot be adequately remedied by a monetary judgment. See Crown Crafts, Inc. v. Aldrich, 148 F.R.D. 151, 152 (E.D.N.C. 1993) (denying motion for expedited discovery where only injury alleged could be adequately remedied by money damages).

## IV. CONCLUSION

For the foregoing reasons, **IT IS, THEREFORE, ORDERED** that the Plaintiffs' Motion Under Fed. R. Civ. P. 26(d) for Expedited Discovery [Doc. 9] is **DENIED**. Discovery in this case shall proceed as prescribed by the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Signed: May 14, 2009

Martin Reidinger
United States District Judge