# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:08cv614-RJC

| | |
|---|---|
| RONALD CARTER and REVOLUTIONARY CONCEPTS, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) **MEMORANDUM AND RECOMMENDATION** ) **AND ORDER** ) |
| EMMANUEL OZOENEH and JOHN DOES NOS. 1 THROUGH 7, | ) ) ) ) |
| Defendants. | ) ) |

**THIS MATTER** is before the Court on the Plaintiffs' "Motion to Amend Complaint and Response to Order to Show Cause" (document #16) filed August 10, 2009; and Non-Parties Lawyers Mutual Liability Company of North Carolina and Jason Miller's "Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend the Complaint" (document #17) filed August 19, 2009 and Defendant "Emmanuel Ozoeneh's Response to Plaintiff's Motion for Leave to File Amended Complaint" (document #19) filed August 27, 2009. On August 26, 2009, Plaintiffs filed their "Brief in Reply to Non-Parties' Brief in Opposition to Plaintiffs' Motion for Leave to Amend the Complaint" (document #18). On September 11, 2009, Plaintiffs filed their "Brief in Reply to Defendant's Brief in Opposition to Plaintiffs' Motion for Leave to Amend the Complaint" (document #20).

The instant Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B), and is now ripe for disposition.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>deny</u> the Plaintiffs' Motion to Amend the Complaint, and will respectfully recommend that the John Doe Defendants be dismissed without prejudice, as discussed below.

## I. **FACTUAL AND PROCEDURAL BACKGROUND**

Taking the facts as alleged in Plaintiffs' Complaint as true, as we must at this stage of the proceeding, Plaintiff Ronald Carter ("Carter") is the inventor of technology that is known as the "EYETALK Communicator" or the "Automated Audio Video Messaging and Answering System"("the Invention"), which is the subject of the United States Patent No. 7,193,644 ("the '644 Patent"). Carter formed Revolutionary Concepts, Inc. ("RCI") in order to commercialize the Invention. In 2002, Carter formed a partnership with Defendant Emmanuel Ozoeneh ("Ozoeneh") for the purpose of finding investors to fund the development of a commercial embodiment of the Invention. At the same time, Carter retained a patent law firm, Dougherty, Clements & Hofer ("the Law Firm") to assist him in securing patent rights for the Invention. The Law Firm filed a provisional application for the Invention, mistakenly listing both Carter and Ozoeneh as co-inventors. Later, the Law Firm produced an opinion that the subject matter of the provisional application would not be patentable in its current form. Thereafter, Carter and Ozoeneh dissolved their partnership. After parting ways with Ozoeneh, Carter continued to develop new features for the Invention.

In October 2003, the Law Firm filed a non-provisional application, claiming the benefit of the earlier provisional application, but naming Carter as the sole inventor. The non-provisional application was directed to devices incorporating the new features developed by Carter alone. After the non-provisional application was filed, Carter and RCI retained a different law firm, Tillman

Wright PLLC ("Tillman Wright"), to take over the patent prosecution. Tillman Wright's prosecution efforts were ultimately successful, and the '644 Patent was issued on March 20, 2007.

Thereafter, Carter and RCI filed suit against the Law Firm, alleging malpractice in damaging Carter's and RCI's foreign patent rights by negligently failing to file timely foreign patent applications. This action is currently pending in Mecklenburg County Superior Court. Following contact between counsel for the Law Firm and Ozoeneh in connection with the state malpractice litigation, Ozoeneh began making public statements asserting that he is the co-inventor or the sole inventor of the Invention. Additionally, Ozoeneh retained counsel, who informed Plaintiffs' counsel "of Ozoeneh's intention to sue Carter and RCI on the basis of Ozoeneh's claim of inventorship, threatening disruption of Plaintiffs' litigation against the Law Firm if a tolling agreement is not signed." Plaintiffs allege that Ozoeneh's threats of litigation have the potential of adversely affecting ongoing negotiations between RCI and two Fortune 500 companies regarding licensing the Invention. They further allege that these threats are simply "part of a legal strategy by the defendants in the malpractice litigation to inflict collateral damage upon Carter and RCI." Plaintiffs allege that if Defendants are not enjoined from making claims that call into question Carter's sole inventorship or RCI's ownership of the '644 Patent, Plaintiffs will be irreparably damaged.

On December 30, 2008, Plaintiffs filed the Complaint (document #1) against Defendants Ozoeneh and John Does Nos. 1 through 7 ("John Doe Defendants") seeking declaratory, compensatory and injunctive relief with respect to the inventorship and ownership of the '644 Patent. Specifically, Plaintiffs seek a declaratory judgment to the effect that Ozoeneh is not an inventor or owner of the technology that is the subject of the '644 Patent. Plaintiffs also assert a breach of contract claim against Ozoeneh alleging that his claims of inventorship and ownership of the

3

Invention are in violation of the contract of mutual release by which Carter and Ozoeneh dissolved their business partnership. Plaintiffs further allege that the seven John Doe Defendants, who are identified only as "attorneys who are licensed to practice in the State of North Carolina or to practice before the United States Patent and Trademark Office, and who reside and/or regularly conduct business in Mecklenburg County, North Carolina," intentionally induced Ozoeneh to breach the contract of mutual release.

Ozoeneh was served with a Summons and a copy of the Complaint on April 15, 2009. On April 17, 2009, Ozoeneh filed a motion *pro se*, seeking an extension of time to respond to the Complaint (document #7). The Court granted Ozoeneh's motion, giving him until June 4, 2009 to file an answer (document #8). On May 12, 2009, the Plaintiffs filed a motion seeking an Order authorizing them to begin limited discovery from Ozoeneh regarding, among other things, the identity of the John Doe Defendants (document #9). The Court denied this motion on May 14, 2009 (document #10). Ozoeneh filed an Answer and Counterclaim on June 4, 2009 (document #11). The Initial Attorneys' Conference was conducted on June 16, 2009 (document #13) and the Scheduling Order was issued on June 19, 2009 (document #14). On August 5, 2009, the Court entered an Order requiring Plaintiffs to show good cause within ten (10) days why they failed to identify and to effect service on the John Doe Defendants. Plaintiffs responded to this Order by filing the instant "Motion to Amend Complaint and Response to Order to Show Cause" (document #16) on August 10, 2009.

Plaintiffs seek to amend the complaint to add attorney Jason Miller ("Miller") and Lawyers Mutual Liability Company of North Carolina ("Lawyers Mutual") as defendants and to add several amended claims against these proposed defendants as well as the current defendants. Plaintiffs argue that the Court should find that the "complexity and conspiratorial nature of the collateral attack

4

against Carter and RCI represents good cause to continue to allow new defendants to be named, as new discovery implicates these attorneys, and Lawyers Mutual, in their tortious activities." In their separate Responses, the non-parties, Miller and Lawyers Mutual, and Defendant Ozoeneh argue that Plaintiffs' proposed amended claims are futile, that is, Plaintiffs will not be able to establish sufficient facts to support these claims.

The Plaintiffs' motion has been briefed as set forth above and is, therefore, ripe for disposition.

## II. DISCUSSION OF CLAIMS

### A. Motion to Amend Complaint

#### 1. Standard of Review

Federal Rule of Civil Procedure 15(a) provides in relevant part that "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Fourth Circuit has stated that "under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." U.S. v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000). Further, "the grant or denial of an opportunity to amend is within the discretion of the District Court." Pittston Co. v. U.S., 199 F.3d 694, 705 (4th Cir. 1999). A court may properly deny a motion for leave to amend where such amendment would be futile, for example where, even with the amendments, the complaint fails to state a claim upon which relief may be granted. See United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008)(affirming district court's denial of motion to amend on grounds of futility where proposed

5

amended complaint failed to state a claim); In re PEC Solutions, Inc. Securities Litigation, 418 F.3d 379, 391 (4th Cir. 2005).

As a general rule, a plaintiff's complaint need only provide a short statement in plain English of the legal claim showing that the pleader is entitled to relief that is also sufficient to provide the defendant with "fair notice" of the claim and its basis. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted); Fed. R. Civ. P. 8(a)(2). In Twombly, the Supreme Court held that the complaint must state "enough facts to state a claim to relief that is plausible on its face." Id. at 570. In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court recently revisited the Twombly decision and elaborated on the facial plausibility requirement articulated therein:

> As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of "entitlement to relief."

Iqbal at 1949 (internal citations omitted).

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

6

suffice." Id. (citing Twombly at 554-55) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

### 2. Count III-Tortious Interference with Contract

Plaintiff seeks to amend the Complaint to assert that Miller and Lawyers Mutual knew of the contract between Carter and Ozoeneh and that they intentionally induced Ozoeneh to breach the contract. Under North Carolina law, to establish a claim for tortious interference with contract a plaintiff must allege and prove: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the

7

contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff. Filmar Racing, Inc. v. Stewart, 141 N.C.App. 668, 674, 541 S.E.2d 733, 739 (2001).

The interference is without justification if the defendants' motives for procuring termination of the contract were not reasonably related to the protection of a legitimate business interest of the defendant. Privette v. University of North Carolina, 96 N.C.App. 124, 134, 385 S.E.2d 185, 190 (1989). Therefore, the complaint must admit of no motive for interference other than malice. Id. at 134-35, 385 S.E.2d at 191.

Plaintiffs' proposed amended complaint alleges that Miller, Lawyers Mutual and the John Doe Defendants "intentionally induced Ozoeneh to breach the contract" and that "such inducement was without justification." However, the amended complaint continues by stating that this was "in an attempt to improve the position of the defendants in the malpractice litigation by harming Carter and RCI." Although Plaintiffs believe that the inventorship issue does not have any bearing on the outcome of the state malpractice litigation, Defendants believe that it does and that it is the key issue in both this case and the state court action. The Law Firm may defend the state court action on the theory that Carter's claim of sole inventorship is illegitimate. Therefore, Defendants have a valid reason for being involved in Ozoeneh's defense of this action for declaratory judgement. On the facts alleged, Plaintiffs' proposed claim for tortious interference with contract has no support under North Carolina law and fails to state a claim upon which relief can be granted. Therefore, the undersigned finds that Plaintiffs' proposed claim for tortious interference with contract against Miller and Lawyers Mutual is futile and denies Plaintiffs Motion to Amend with regard to Count III.

### 3. Count IV-Tortious Interference with Prospective Economic Advantage

Plaintiffs seek to amend the Complaint to add a tortious interference with prospective economic advantage claim against all current and proposed defendants. To prove a claim of tortious interference with prospective economic advantage a plaintiff must allege and prove: (1) the defendant induced a third party not to enter into a contract with the plaintiff, (2) the contract would have ensued but for the interference of the defendant; (3) the defendant acted without justification; (4) the plaintiff suffered measurable damages resulting from defendant's allegedly tortious activities. Walker v. Sloan, 137 N.C.App. 387, 394, 529 S.E.2d 236, 242 (2000).

In the proposed amended claim, Plaintiffs do not allege that any of the current or proposed defendants wrongfully induced a third party not to enter into a contract with Plaintiffs nor do they allege that the current or proposed Defendants had any contact with or even knew the identity of the "investment firm" negotiating with Plaintiffs. Furthermore, Plaintiffs proposed amended claim fails to allege any facts showing that a contract would have ensued but for the actions of the current and proposed Defendants. The undersigned finds that Plaintiffs' proposed claim for tortious interference with prospective economic advantage against all Defendants is futile because it fails to allege "enough facts to state a claim for relief that is plausible on its face." Twombly at 570. Therefore, the undersigned denies Plaintiffs' Motion to Amend with regard to Count IV.

### 4. Count V-Maintenance

Plaintiffs seek to amend the Complaint to add a maintenance claim against Miller and Lawyers Mutual. The essential elements of a claim for maintenance require "an officious intermeddling in a suit, which in no way belongs to one, by maintaining or assisting either party with money or otherwise to prosecute or defend it." Odell v. Legal Bucks, LLC, 665 S.E.2d 767, 773

(N.C. App. 2008). The North Carolina Court of Appeals noted that:

> [O]ur Courts have held for at least a century that an outsider's involvement in a lawsuit does not constitute champerty or maintenance merely because the outsider provides financial assistance to a litigant and shares in the recovery. Rather 'a contract or agreement will not be held within the condemnation of the principle[s]. . . unless the interference is clearly officious and for the purpose of stirring up strife and continuing litigation.'

Id. at 775 (quoting Smith v. Hartsell, 150 N.C. 71, 76, 63 S.E.2d 172, 174 (1908)). "[T]here is well-considered authority to the effect that assistance of this kind will not be considered officious when one has an interest or acts in the bona fide belief that he has." Smith v. Hartsell, 150 N.C. 71, 73, 63 S.E.2d 172, 174 (1908). "[W]here, therefore, a party either has, or honestly believes he has, an interest, either in the subject-matter of the litigation, or in the question to be determined, he may assist in the prosecution or defense of the suit, either by furnishing counsel, or contributing to the expenses. . ." Id.

Lawyers Mutual, who is providing the state court defense on behalf of its lawyer insureds, and Miller, who was an attorney with the Law Firm that Plaintiffs have sued in the state malpractice action, have the right to pursue all defenses available to them in the state court action. As stated above, although Plaintiffs believe that the inventorship issue does not have any bearing on the outcome of the state court action, the Law Firm may defend that action on the theory that Carter was not the inventor. As such, Plaintiffs' claim for maintenance against Lawyers Mutual and Jason Miller is futile. Therefore, the undersigned denies Plaintiffs' Motion to Amend with regard to Count V.

### 5. Count VI-Unfair and Deceptive Trade Practices

Plaintiffs seek to amend the Complaint to add a claim for violation of N.C. Gen. Stat. § 75-

1.1, unfair and deceptive trade practices, against Lawyers Mutual. To establish a claim for violation of N.C. Gen. Stat. § 75-1.1, a plaintiff must allege and prove three elements: "(1) an unfair and deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant." Nucor Corp. v. Prudential Equity Group, LLC, 189 N.C.App. 731, 738, 659 S.E.2d 483, 488 (2008). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001).

Plaintiffs argue that by paying Ozoeneh's legal fees and expenses "Lawyers Mutual has committed acts that offend established public policy, are immoral and unethical and are therefore unfair within the meaning of N.C. Gen. Stat.§ 75-1.1." As stated above, Lawyers Mutual has a valid interest in determining who is the inventor of the Invention and therefore, their payment of Ozoeneh's legal fees cannot be characterized as unfair or deceptive. Plaintiffs allegations are insufficient to state a claim for unfair and deceptive trade practices and thus, futile. Therefore, the undersigned denies Plaintiffs' Motion to Amend with regard to Count VI.

**6. Count VII-Racketeering**

Plaintiffs seek to amend the Complaint to add a claim for violation of N.C. Gen. Stat. § 75D-4 against all current and proposed Defendants. To prevail on a claim for violations of the state RICO statute, Plaintiffs must prove that the Defendants "engaged in a pattern of racketeering activity." N.C. Gen. Stat. § 75D-4(a)(1). This pattern is defined as:

> engaging in at least two incidents of racketeering activity that have the same or similar purposes, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated and unrelated incidents . . . [and] that at least one other of such incidents occurred within a four-year period of time of the other.

N.C. Gen. Stat. § 75D-3(b). "Racketeering activity" is defined under the North Carolina statute as

any conduct included in the definition under 18 U.S.C. § 1961(1), conduct involving "money laundering," conduct under the controlled substances portion of the North Carolina General Statutes, and any conduct made criminal under Chapter 14 of the General Statutes, with certain exceptions. N.C. Gen. Stat. §75D-(3)(c)(1)-(2). Because the North Carolina RICO statute is quite expansive, the General Assembly clarified the statute stating:

> [i]t is not the intent of the General Assembly that this Chapter apply to isolated and unrelated incidents of unlawful conduct but only to an interrelated pattern of organized unlawful activity, the purpose or effect of which is to derive pecuniary gain. Further, it is not the intent of the General Assembly that legitimate business organizations doing business in this State, having no connection to, or any relationship or involvement with organized unlawful elements, groups or activities be subject to suit under the provisions of this Chapter.

N.C. Gen. Stat. § 75D-2(c). "The definition in § 75D-3(b) sets forth the minimum requirements for finding that a person has engaged in a 'pattern of racketeering activity'; however, the term 'organized unlawful conduct' better encapsulates what is required to say that someone has 'engaged' in that 'pattern of unlawful activity.'" Delk v. ArvinMeritor, Inc., 179 F. Supp.2d 615, 628 (W.D.N.C. 2002). None of the conduct alleged against the current and proposed Defendants, even viewed in a light most favorable to Plaintiff, constitutes "organized unlawful conduct" that would support a claim under North Carolina's RICO provisions. Therefore, the proposed RICO claim is futile and the undersigned denies Plaintiffs' Motion to Amend with regard to Count VII.

   7. **Count VIII-Slander of Title and/or Conspiracy to Slander Title**

Plaintiff RCI seeks to amend the Complaint to add a claim for slander of title against all current and proposed Defendants. The elements of slander of title are: (1) the uttering of slanderous words in regard to the title of someone's property; (2) the falsity of the words; (3) malice; and (4) special damages. Southeastern Jurisdictional Administrative Council, Inc. v. Emerson, 188 N.C.

App. 93, 98, 655 S.E.2d 719, 722 (2008). Malice is established by showing that the statement regarding title was not made in good faith, that it was made without probable cause for defendant's belief, or that defendant could not have honestly entertained a belief in the statement. Cardon v. McConnell, 120 N.C. 461, 27 S.E. 109 (1897).

Plaintiffs' attempt to characterize their proposed claim as a slander to title claim must fail. Slander to title claims apply only to derogatory matter published with respect to real property. Carter v. Duke University Medical Center, No. 95-CV-00042, 1995 WL 17208544, at *3 (M.D.N.C. October 3, 1995); Whyburn v. Norwood, 47 N..C. App. 310, 315, 267 S.E.2d 374, 377 (1980). Plaintiffs' argue in their reply brief that while the majority of cases do involve real property, there is no reason why patents cannot be treated like trademarks and real property and should be the proper subject of a slander of title claim. Plaintiffs cite McElwee v. Blackwell, 94 N.C. 261 (1886), for the proposition that a trademark can be the subject of a slander of title action but they do not cite any authority that a patent can be the subject of such an action. Even assuming *arguendo* that a slander to title claim is applicable in a patent dispute, the Plaintiffs' proposed claim still fails to allege "enough facts to state a claim for relief that is plausible on its face." Twombly at 570. Therefore, the proposed slander of title claim is futile and the undersigned denies Plaintiffs' Motion to Amend with regard to Count VIII.

## B. **Response to Order to Show Cause**

Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Plaintiffs argue that the complexity and conspiratorial nature of the collateral attack against Carter and RCI represent good cause to continue to allow new defendants to be named and that the Court should grant the Plaintiffs' Motion to Amend and extend the time for service of process upon the John Doe Defendants by 30 days as to the proposed defendants and by 120 days as to the defendants still unnamed.

Plaintiffs filed their Complaint on December 30, 2008.  Plaintiffs have alleged that the John Doe Defendants are attorneys involved in the state malpractice litigation who sought out Ozoeneh and encouraged him to make a false claim of ownership of the Invention in order to undermine RCI's U.S. patent rights and pressure Plaintiffs to settle or give up the state malpractice litigation. Plaintiffs initially argued in a motion for expedited discovery that a deposition of Ozoeneh would help to determine the identities of the John Doe Defendants.  Plaintiffs have since deposed Ozoeneh and now contend that further discovery is necessary to state with precision which persons were involved.  The undersigned finds this argument disingenuous.  Plaintiffs initially retained the Law Firm and should possess some knowledge of its attorneys.  Now, Plaintiffs have had several months to discover these defendants' identities and continue to argue that they need more time.  In fact, the Honorable Martin Reidinger, *sua sponte*, issued the show cause order on August 5, 2009, clearly indicating the Court's belief that Plaintiffs had had enough time to determine the identity of the John Doe Defendants.

Although the undersigned realizes this is a complex patent case, Plaintiffs have had adequate time to identify and effect service on the John Doe Defendants and have not shown good cause why Defendants have neither been identified nor served.  Therefore, the undersigned respectfully recommends that the John Doe Defendants be dismissed without prejudice pursuant to Rule 4(m)

of the Federal Rules of Civil Procedure.

### III. ORDER

**NOW, THEREFORE, IT IS ORDERED** that Plaintiffs' "Motion to Amend Complaint" (document #16) is **DENIED**.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the claims against the John Doe Defendants be **DISMISSED WITHOUT PREJUDICE**.

### V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties, <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO RECOMMENDED.**

Signed: September 15, 2009

David S. Cayer
United States Magistrate Judge