# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:08cv614-RJC-DSC

| | |
|---|---|
| RONALD CARTER & <br> REVOLUTIONARY CONCEPTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> EMMANUEL OZOENEH & <br> JOHN DOES NOS. 1 THROUGH 7, <br><br> Defendants. | ORDER |

**THIS MATTER** is before the Court on the plaintiffs' appeal of and objection (Doc. No. 22) to the Magistrate Judge's Memorandum and Recommendation and Order ("MR&O") (Doc. No. 21) and the defendants' responses (Doc. Nos. 23, 24). The matter is now ripe for the Court's determination.

## I. BACKGROUND

The plaintiffs do not object to any specific findings of fact as set forth in the M&R, and the Court adopts and reiterates those facts as follows:

> Taking the facts as alleged in Plaintiffs' Complaint as true, as we must at this stage of the proceeding, Plaintiff Ronald Carter ("Carter") is the inventor of technology that is known as the "EYETALK Communicator" or the "Automated Audio Video Messaging and Answering System"("the Invention"), which is the subject of the United States Patent No. 7,193,644 ("the '644 Patent"). Carter formed Revolutionary Concepts, Inc. ("RCI") in order to commercialize the Invention. In 2002, Carter formed a partnership with Defendant Emmanuel Ozoeneh ("Ozoeneh") for the purpose of finding investors to fund the development of a commercial embodiment of the Invention. At the same time, Carter retained a patent law firm, Dougherty, Clements & Hofer ("the Law Firm") to assist him in securing patent rights for the Invention. The Law Firm filed a provisional application for the Invention, mistakenly listing both Carter and Ozoeneh as co-inventors. Later, the Law Firm produced an opinion that the subject matter of the provisional application

would not be patentable in its current form. Thereafter, Carter and Ozoeneh dissolved their partnership. After parting ways with Ozoeneh, Carter continued to develop new features for the Invention.

In October 2003, the Law Firm filed a non-provisional application, claiming the benefit of the earlier provisional application, but naming Carter as the sole inventor. The non-provisional application was directed to devices incorporating the new features developed by Carter alone. After the non-provisional application was filed, Carter and RCI retained a different law firm, Tillman Wright PLLC ("Tillman Wright"), to take over the patent prosecution. Tillman Wright's prosecution efforts were ultimately successful, and the '644 Patent was issued on March 20, 2007.

Thereafter, Carter and RCI filed suit against the Law Firm, alleging malpractice in damaging Carter's and RCI's foreign patent rights by negligently failing to file timely foreign patent applications. This action is currently pending in Mecklenburg County Superior Court. Following contact between counsel for the Law Firm and Ozoeneh in connection with the state malpractice litigation, Ozoeneh began making public statements asserting that he is the co-inventor or the sole inventor of the Invention. Additionally, Ozoeneh retained counsel, who informed Plaintiffs' counsel "of Ozoeneh's intention to sue Carter and RCI on the basis of Ozoeneh's claim of inventorship, threatening disruption of Plaintiffs' litigation against the Law Firm if a tolling agreement is not signed." Plaintiffs allege that Ozoeneh's threats of litigation have the potential of adversely affecting ongoing negotiations between RCI and two Fortune 500 companies regarding licensing the Invention. They further allege that these threats are simply "part of a legal strategy by the defendants in the malpractice litigation to inflict collateral damage upon Carter and RCI." Plaintiffs allege that if Defendants are not enjoined from making claims that call into question Carter's sole inventorship or RCI's ownership of the '644 Patent, Plaintiffs will be irreparably damaged.

On December 30, 2008, Plaintiffs filed the Complaint (document #1) against Defendants Ozoeneh and John Does Nos. 1 through 7 ("John Doe Defendants") seeking declaratory, compensatory and injunctive relief with respect to the inventorship and ownership of the '644 Patent. Specifically, Plaintiffs seek a declaratory judgment to the effect that Ozoeneh is not an inventor or owner of the technology that is the subject of the '644 Patent. Plaintiffs also assert a breach of contract claim against Ozoeneh alleging that his claims of inventorship and ownership of the Invention are in violation of the contract of mutual release by which Carter and Ozoeneh dissolved their business partnership. Plaintiffs further allege that the seven John Doe Defendants, who are identified only as "attorneys who are licensed to practice in the State of North Carolina or to practice before the United States Patent and Trademark Office, and who reside and/or regularly conduct business in Mecklenburg County, North Carolina," intentionally induced Ozoeneh to breach the contract of mutual release.

Ozoeneh was served with a Summons and a copy of the Complaint on April 15, 2009. On April 17, 2009, Ozoeneh filed a motion *pro se*, seeking an extension

of time to respond to the Complaint (document #7). The Court granted Ozoeneh's motion, giving him until June 4, 2009 to file an answer (document #8). On May 12, 2009, the Plaintiffs filed a motion seeking an Order authorizing them to begin limited discovery from Ozoeneh regarding, among other things, the identity of the John Doe Defendants (document #9). The Court denied this motion on May 14, 2009 (document #10). Ozoeneh filed an Answer and Counterclaim on June 4, 2009 (document #11). The Initial Attorneys' Conference was conducted on June 16, 2009 (document #13) and the Scheduling Order was issued on June 19, 2009 (document #14). On August 5, 2009, the Court entered an Order requiring Plaintiffs to show good cause within ten (10) days why they failed to identify and to effect service on the John Doe Defendants. Plaintiffs responded to this Order by filing the instant "Motion to Amend Complaint and Response to Order to Show Cause" (document #16) on August 10, 2009.

Plaintiffs seek to amend the complaint to add attorney Jason Miller ("Miller") and Lawyers Mutual Liability Company of North Carolina ("[LM]") as defendants and to add several amended claims against these proposed defendants as well as the current defendants. Plaintiffs argue that the Court should find that the "complexity and conspiratorial nature of the collateral attack against Carter and RCI represents good cause to continue to allow new defendants to be named, as new discovery implicates these attorneys, and LM, in their tortious activities." In their separate Responses, the non-parties, Miller and LM, and Defendant Ozoeneh argue that Plaintiffs' proposed amended claims are futile, that is, Plaintiffs will not be able to establish sufficient facts to support these claims.

## II. STANDARD OF REVIEW

The district court has authority to assign non-dispositive pretrial matters pending before the court to a magistrate judge to "hear and determine." 28 U.S.C. § 636(b)(1)(A). When reviewing an objection to a magistrate judge's order on a non-dispositive matter, the district court must set aside or modify any portion of that order which is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). A motion to amend the complaint is generally viewed as a non-dispositive motion, and thus is reviewed under Rule 72(a). Pagano v. Frank, 983 F.2d 343, 346 (1st Cir.1993). If a magistrate judge's order is contrary to law, then the judge must have failed to apply or misapplied statutes, case law, or procedural rules. See Catskill Dev. LLC v. Park Place Entm't Corp., 206 F.R.D. 78, 86 (S.D.N.Y. 2002).

Alternatively, the district court may assign dispositive pretrial matters pending before the court to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(B). The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Similarly, de novo review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the Court has conducted a careful review of the Magistrate Judge's M&R.

## III. DISCUSSION

### A. Motion to Amend Complaint

Federal Rule of Civil Procedure 15(a) provides in relevant part that "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Fourth Circuit has stated that "under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." United States v.

4

Pittman, 209 F.3d 314, 317 (4th Cir. 2000). Further, "the grant or denial of an opportunity to amend is within the discretion of the District Court." Pittston Co. v. United States, 199 F.3d 694, 705 (4th Cir. 1999). A court may properly deny a motion for leave to amend where such amendment would be futile, for example where, even with the amendments, the complaint fails to state a claim upon which relief may be granted. See United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008) (affirming district court's denial of motion to amend on grounds of futility where proposed amended complaint failed to state a claim); In re PEC Solutions, Inc. Securities Litigation, 418 F.3d 379, 391 (4th Cir. 2005).

In its review of a motion for failure to state a claim upon which relief may be granted, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs, Inc. v. Matakari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009) (quoting Towmbly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

Plaintiffs at times characterize the Magistrate Judge's order denying their motion to amend the complaint as a "recommendation." This was not a recommendation to the Court, but rather an order deciding a non-dispositive motion, and the Court may only set aside the Magistrate Judge's

5

order if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

### 1. Count III – Tortious Interference with Contract

The plaintiffs argue that the Magistrate Judge erred in holding that the complaint admitted of a "motive for interference other than malice." Privette v. Univ. of N.C., 385 S.E.2d 185, 190 (N.C. Ct. App. 1989). The essential elements of a tortious interference with contract claim are: (1) that a valid contract existed between the plaintiff and a third party; (2) that the defendant had knowledge of the plaintiff's contract with the third person; (3) that the defendant intentionally induced the third person not to perform his contract with the plaintiff; (4) that the defendants acted without justification; and (5) that the interference caused the plaintiff actual damages. Peoples Sec. Life Ins. Co. v. Hooks, 367 S.E.2d 647, 649-50 (N.C.1988). In order for such a claim to survive, it "must admit of no motive for interference other than malice." Privette, 385 S.E.2d at 190.

The Magistrate Judge held that since the complaint admitted the defendants' actions were taken "in an attempt to improve the position of the defendants in the malpractice litigation by harming Carter and RCI," the complaint admitted a legitimate business objective. (Doc. No. 21 at 8). However, the paragraph of the complaint from which this quote is taken states more fully that the inducement was "undertaken in bad faith and with malice in an attempt to improve the position of the defendants in the malpractice litigation by harming Carter and RCI." (Doc. No. 16-1 at ¶ 77). The Court does not read this sentence to admit of a motive for interference other than malice. The Court's reading is informed by paragraph 53 of the proposed amended complaint, incorporated by reference into Count III, which alleges that LM and Miller have acted in this manner "in order to cause [the plaintiffs] to be less able to sustain their malpractice suit against the Law Firm and their insurer, Lawyers Mutual." (Doc. No. 16-1 at ¶ 53). While the defendants may indeed have a

6

legitimate motive based on their claim in the state malpractice litigation that Carter was not the inventor, the complaint does not admit this motive. Viewed in the light most favorable to the plaintiffs, the complaint allows the Court to draw the reasonable inference that LM and Miller are liable for tortious interference with contract under North Carolina law. See Iqbal, 129 S. Ct. at 1949.

### 2. Count IV – Tortious Interference with Prospective Economic Advantage

The plaintiffs object to the Magistrate Judge's holding that the amended complaint fails to state a claim for tortious interference with prospective economic advantage. The elements of a claim for tortious interference with prospective economic advantage include: (1) the defendant induced a third party not to enter into a contract with the plaintiff; (2) the contract would have ensued but for the interference of the defendant; (3) the defendant acted without justification; and (4) the plaintiff suffered measurable damages resulting from the defendant's allegedly tortious activities. Walker v. Sloan, 529 S.E.2d 236, 242 (N.C. Ct. App. 2000).

The Magistrate Judge determined the plaintiff had failed to allege that any of the current or proposed defendants wrongfully induced a third party not to enter into a contract with the plaintiffs. The plaintiffs argue that the proposed amended complaint "accuses all of the Defendants of asserting Ozoeneh's claims of inventorship and ownership for the precise purpose of causing financial harm to RCI (¶ 77) and states that 'those claims were the direct, predictable, and proximate cause of the refusal of the investment firm to invest $3,000,000 with RCI' (¶ 86)." (Doc. No. 22 at 9).

However, in arguing this issue, plaintiffs are taking the type of harm alleged in paragraph 77 (tortious interference with contract claim), and projecting that allegation onto the tortious interference with prospective economic advantage claim. While the former paragraph is incorporated into the latter claim by reference, these are two different types of harm. The type of

harm alleged in paragraph 77 involves alleged actions "undertaken in bad faith and with malice in an attempt to improve the position of the defendants in the malpractice litigation." (Doc. No. 16-1 at ¶ 77). The type of harm relevant to a tortious interference with prospective economic advantage claim is caused by unjustifiably inducing a third party not to contract with a plaintiff, as opposed to harm that is intentionally caused to gain an advantage in litigation. The plaintiffs allege the latter in the amended complaint, but not the former. Therefore, the plaintiffs have failed to state a claim for tortious interference with prospective economic advantage, and this count of the amended complaint is futile.

### 3. Count V – Maintenance

The plaintiffs object to the Magistrate Judge's holding that the claim for maintenance is futile. The elements of the common law tort of maintenance are (1) officious intermeddling in a suit, (2) which does not belong to the intermeddler, (3) by maintaining or assisting either party with money or otherwise to prosecute or defend it. Smith v. Hartsell, 63 S.E. 172, 174 (N.C. 1908). A claim for maintenance is cognizable only where "the interference is clearly officious" and intended to cause "strife and continuing litigation." Id. Further, "there is well-considered authority to the effect that assistance of this kind will not be considered officious when one has an interest or acts in the bona fide belief that he has." Id.

The Magistrate Judge found that LM, which is providing the state-court defense on behalf of its lawyer insureds against Carter, has the right to pursue all defenses available to them in that action, including the defense that Carter was not the inventor. With this understanding, the Magistrate Judge held that even though the plaintiffs believe the inventorship issue has no bearing on the state-court litigation, the Law Firm may defend that action on the theory that Carter was not

the inventor, and Lawyers Mutual thus has an interest in the subject matter of the same issue in this litigation.

The Court questions how the plaintiffs will prove LM is acting without an honest, bona fide belief that it has an interest in defending this federal court action. However, while LM may indeed have a valid interest in this litigation,[1] the plaintiffs have alleged that LM's motives in maintaining Ozoeneh's litigation were "undertaken in bad faith and with malice" to improve their position in the malpractice litigation (Doc. No. 16-1 at ¶ 77), and that Lawyers Mutual has "no legitimate interest" in the outcome of this suit (Id. at ¶ 89). The Court must accept the plaintiffs' assertions of bad faith as true at the Rule 12(b)(6) stage. The Court thus finds that the claim for maintenance is not futile.

### 4. Count VI – Unfair and Deceptive Trade Practices

The plaintiffs object to the Magistrate Judge's holding that the conduct alleged in the proposed amended complaint does not state a claim for unfair and deceptive trade practices ("UDTP") under North Carolina law. To state a UDTP claim under N.C. Gen. Stat. § 75-1.1, a plaintiff must allege three elements: "(1) an unfair or deceptive trade practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant." Nucor Corp. v. Prudential Equity Group, LLC, 659 S.E.2d 483, 488 (N.C. Ct. App. 2008). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001).

While LM may have a valid interest in determining who is the inventor of the Invention, the

---

[1] Despite the plaintiffs' seemingly endless argument to the contrary, the Court finds the issue of whether Carter was the sole inventor relevant to the state-court action, if asserted in good faith. If Carter was not the inventor, then he may have no standing to assert his claim for legal malpractice in the state-court action, because he would likely have had no initial right to seek foreign patents for the Invention. See, e.g., European Patent Convention, Part 2, Chapter 2, Art. 60(1) ("The right to a European patent shall belong to the inventor or his successor in title.").

plaintiffs have claimed that LM has acted in bad faith and with malice in asserting this defense. If the plaintiffs can prove what they allege – that LM's raising the inventorship issue in the malpractice litigation is an exercise of bad faith – then the plaintiffs may also be able to prove that LM's involvement in the instant action is unethical or unscrupulous. The proposed amended complaint also alleges that LM's actions affected the plaintiffs' ability to enter into contracts in interstate commerce, and that as a result of LM's actions, the plaintiffs have been injured in their business. Thus, taking the plaintiffs' allegations as true, the Court finds that they have sufficiently pled a claim for unfair and deceptive trade practices.

### 5. Count VII – Racketeering

The plaintiffs object to the Magistrate Judge's holding that the conduct alleged in the proposed amended complaint does not represent the type of "organized unlawful conduct" envisioned by North Carolina's RICO provisions. After discussing the elements of a RICO violation, the M&R observes that "[t]he definition in § 75D-3(b) sets forth the minimum requirements for finding that a person has engaged in a 'pattern of racketeering activity'; however, the term 'organized unlawful conduct' better encapsulates what is required to say that someone has 'engaged' in that 'pattern of unlawful activity.'" Delk v. ArvinMeritor, Inc., 179 F. Supp. 2d 615, 628 (W.D.N.C. 2002). This statement derives from the North Carolina legislature's clarification:

> It is not the intent of the General Assembly that this Chapter apply to isolated and unrelated incidents of unlawful conduct but only to an interrelated pattern of organized unlawful activity, the purpose or effect of which is to derive pecuniary gain. Further, it is not the intent of the General Assembly that legitimate business organizations doing business in this State, having no connection to, or any relationship or involvement with organized unlawful elements, groups or activities be subject to suit under the provisions of this Chapter.

N.C. Gen. Stat. § 75D-2(c).

The plaintiffs fail to show how, even if the defendants have acted in bad faith in the manner by which they have conducted the litigation in state court and now in this Court, such actions constitute a pattern of racketeering activity that is organized and unlawful. The Court finds no clear error in the Magistrate Judge's determination regarding this claim.

### 6. Count VIII – Slander of Title

The plaintiffs object to the Magistrate Judge's determination that their proposed claim for slander of title is futile. Their main point of argument is that a case from 1886, McElwee v. Blackwell, 94 N.C. 261 (1886), allowed a slander of title claim in a trademark dispute. However, the plaintiffs point to no case that has allowed a slander of title claim in a patent dispute, and this Court is not inclined to expand North Carolina common law without a more persuasive presentation. There is certainly no clear error in the Magistrate Judge's determination of this issue. The plaintiffs' claim for slander of title is futile.

### B. Claims against John Doe Defendants

The plaintiffs object to the Magistrate Judge's recommendation that the Court dismiss without prejudice the claims against the John Doe defendants. On August 5, 2009, the Honorable Martin Reidinger issued a sua sponte show cause order indicating the Court's belief that the plaintiffs had been granted sufficient time to ascertain the John Doe defendants' identities. Based on the record in the case and the ample time the plaintiffs have been granted to determine these defendants' identities, the Court will dismiss the claims against the John Doe defendants without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The claims against the John Doe defendants (Doc. No. 1) are **DISMISSED WITHOUT PREJUDICE**; and

2. The plaintiffs' motion to amend complaint (Doc. No. 16) is **GRANTED IN PART** and **DENIED IN PART** – that is, **GRANTED** as to **Count III** (tortious interference with contract), **Count V** (maintenance), and **Count VI** (UDTP); and **DENIED** as to **Count IV** (tortious interference with prospective economic advantage), **Count VII** (racketeering), and **Count VIII** (slander of title).

**SO ORDERED.**

Signed: March 8, 2010

Robert J. Conrad, Jr.
Chief United States District Judge